**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

**KAYLA J. GILES**                                              **CIVIL ACTION NO. 1:19-cv-01173**

**VERSUS**                                                          **CHIEF JUDGE DEE D. DRELL**

**DELTA DEFENSE, L.L.C., and**                      **MAGISTRATE JUDGE JOSEPH**
**UNITED SPECIALTY INSURANCE COMPANY**   **H.L. PEREZ-MONTES**
**Defendants**
--------------------------------------------------------------------------------------------------------------------------

<u>**PLAINTIFF'S RESPONSE TO UNITED SPECIALTY INSURANCE COMPANY'S**</u>
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

MAY IT PLEASE THE COURT:

KAYLA J. GILES, through undersigned counsel, presents the following in opposition to the

Motion for Summary Judgment filed by United Specialty Insurance Company [hereinafter "USIC"].

*Recent Developments*

After a two (2) week trial Kayla J. Giles (Coutee) was found guilty of Second Degree

Murder and Obstruction of Justice in No. 345,209, by a unanimous jury in the Ninth Judicial

District Court on January 29, 2022. She did not testify and continues to maintain her innocence.

Her video-taped statement given to Det. Blake Butler, shortly after the incident, was played for the

jury. She has been set to be sentenced on March 28, 2022, so her appeal delays, under Louisiana

law have not yet commenced.

*Law and Argument*

The issue before the court is whether the actions of plaintiff constitute an "act of self-

defense within the terms of the policy. Specifically, the issue is whether the force used was

against "an imminent threat of death or great bodily injury by an aggressor," was "reasonable

under the circumstances and proportionate to the threat," and "permitted by applicable law."

The recitation of facts in the Memorandum of USIC is essentially correct. However, the

conclusion reached by USIC is not.

*"Against an imminent threat of death or great bodily injury by an aggressor"*

Plaintiff admitted she shot the victim almost immediately at the scene. She then gave a statement to the investigating detective, Det. Butler.

As stated by USIC, the events were filmed on video-tape from a nearby business. The video shows that the custody exchange was completed and the children were all in the vehicle of the victim when plaintiff returned to her vehicle. The victim came after her, hollering as he did. When plaintiff entered her vehicle she stated that she was in fear of being harmed by the victim. She shot one time from inside her vehicle as the victim was opening the door, trying to get in her vehicle.

The policy uses the phrase "against an imminent threat of death or great bodily injury by an aggressor."  That phrase by its terms requires an inquiry into the state of mind of the plaintiff. It is subjective and the statement of plaintiff quoted by USIC in its Memorandum clearly reflects that the plaintiff was in compliance with the terms of the policy.

This phrase is seldom used in Louisiana jurisprudence.  It does, however, appear in ***State v. Malveaux***, 17-1082 (La. App. 3 Cir. 5/30/2018), 245 So. 3d 81, 88, in connection with a search of cell phones.  That court quoted federal jurisprudence, and in particular United States v. Gilloiam, 842 F. 3d 801 (2nd Cir. 2016) which was interpreting the Stored Communicatrions Act and in particular 18 U.S.C. §2702©(4) and stated -

> Congress has "deemed it reasonable to subordinate any individual privacy interest in cell phone location information to society's more compelling interest in preventing **an imminent threat of death or serious bodily injury,"** and has therefore given service providers the authority to decide whether there existed an "emergency involving danger of death or serious physical injury to any person." *United States v. Caraballo* , 963 F.Supp.2d 341, 360 (D. Vt. 2013) (citations omitted), *aff'd* , 831 F.3d 95 (2d Cir. 2016). Based on [law enforcement's] affirmation, Sprint had a good faith basis for believing that the disclosure of Gilliam's cell phone location was necessary to protect a missing child from being prostituted and subject to serious physical injury. [emphasis added]

*"Reasonable under the circumstances and proportionate to the threat"*

The phrase *"reasonable under the circumstances"* has been frequently used by the state courts of Louisiana.

(a.) ***Smith v. K-Mart Corp.***, 97-1728 (La. App. 4 Cir. 5/20/98) 712 So, 2d 1042

(b.) ***Dorty v. City of Pineville***, 815 So. 2d 393 (La. App 3 Cir 2002),

(c.) ***Mitchell v. Dillard Dept. Stores, Inc.,*** 772 So. 2d 733 (La. App.. 2000)

(d.) ***Marine Pile Drivers, LLC v. Welco, Inc.*** 988 So. 2d 878 (La. App. 2008)

The phrase *"proportionate to the threat"* does not appear often in Louisiana jurisprudence but it can be found in ***Allgood v. Bordelon***, 15-504 (La. App. 3 Cir. 12/9/15), 185 So. 3d 26.

These phrases require subjective inquiry into the state of mind of the plaintiff.  Any other interpretation would make the policy a nullity as it would allow the insurer to substitute its judgment for that of the insured.  The facts at the time indicated to plaintiff that she had no other way to protect herself other than the use of the force she used.

*"Permitted by applicable law"*

This case deals with the "Castle Doctrine" as extended to motor vehicles.  This is also know as "Stand Your Ground" or "Shoot-the-Intruder".  The Louisiana Castle Doctrine is found in a subsection of La. R.S. 14:20, which states:

"**§ 14:20. Justifiable homicide**
A.  A homicide is justifiable:

(4) (a) When committed by a person lawfully inside a dwelling, a place of business, or a motor vehicle as defined in R.S. 32:1(40) when the conflict began, against a person who is attempting to make an unlawful entry into the dwelling, place of business, or motor vehicle, or who has made an unlawful entry into the dwelling, place of business, or motor vehicle, and the person committing the homicide reasonably believes that the use of deadly force is necessary to prevent the entry or to compel the intruder to leave the dwelling, place of business, or motor vehicle.

…
B. For the purposes of this Section, there shall be a presumption that a person lawfully inside a dwelling, place of business, or motor vehicle held a reasonable belief that the use of deadly force was necessary to prevent unlawful entry thereto, or to compel an unlawful intruder to leave the dwelling, place of business, or motor vehicle when the conflict began, if both of the following occur:

(1) The person against whom deadly force was used was in the process of unlawfully and forcibly entering or had unlawfully and forcibly entered the dwelling, place of business, or motor vehicle.

(2) The person who used deadly force knew or had reason to believe that an unlawful and forcible entry was occurring or had occurred.

C. A person who is not engaged in unlawful activity and who is in a place where he or she has a right to be shall have no duty to retreat before using deadly force as provided for in this Section, and may stand his or her ground and meet force with force.

D. No finder of fact shall be permitted to consider the possibility of retreat as a factor in determining whether or not the person who used deadly force had a reasonable belief that deadly force was reasonable and apparently necessary to prevent a violent or forcible felony involving life or great bodily harm or to prevent the unlawful entry."

**History:** Amended by Acts 2014, No. 163,s. 1, eff. 8/1/2014. Added by Acts 1976, No. 655, §1. Amended by Acts 1977, No. 392, §1; Acts 1983, No. 234, §1; Acts 1993, No. 516, §1; Acts 1997, No. 1378, §1; Acts 2003, No. 660, §1; Acts 2006, No. 141, §1.

Recent Louisiana decisions interpreting the statute have expressed the confusion that has resulted from the enactment of the "Castle Doctrine" or so-called "Stand Your Ground" law.

**State v. Wilkins**, 2013-KK-2539 (La. 01/15/2014), 131 So. 3d 839, where the Louisiana Supreme Court stated -

". . . .the effect of the 2006 La. Acts 141, amending La.R.S. 14:20 and adding subsections C and D to the statute, was two-fold: a person may choose to defend himself or herself with deadly force under the circumstances defined in R.S. 14:20(A), without considering whether retreat or escape is possible, *i.e.,* a person "may stand his or her ground and meet force with force" (C); and he or she may do so without fear that, if it came to it, a jury may nevertheless second guess the decision not to flee from the encounter in assessing whether the use of deadly force was justified (D). The overall effect of the 2006 amendments was thus to supplant a jurisprudential rule so deeply entrenched in Louisiana law that some decisions continue to adhere to it to this day. *See, e.g., State v. Vedol,* 12–0376, p. 7 (La. App. 5 Cir. 3/13/13), 113 So.3d 1119, 1124 ("[T]his Court has continued to recognize that while there is no unqualified duty to retreat from an altercation, the possibility of escape is a recognized factor in determining whether or not a defendant had a reasonable belief that deadly force was necessary to avoid the danger.") (citation omitted). The legislature is, however, "presumed to have enacted a statute in light of preceding statutes involving the same subject matter and decisions construing such statutes, and, where the new statute is worded differently from the preceding statute, the Legislature is presumed to have intended to change the law." *State v. Johnson,* 03–2993, pp. 14–15 (La.10/19/04), 884 So.2d 568, 577 (internal quotation marks and citation omitted)."

Later, in the case of **State v. Wells**, 2011-KA-0744, (Al. App. 4th Cir. 074/11/2014) Judge Landrieu pointed out in her dissent at Page 170, the issues brought about by the

"Stand Your Ground" defense. The Louisiana Supreme Court addressed some of these in their review of that case when they stated -

"A person may choose to defend himself or herself with deadly force under the circumstances defined in R.S. 14:20(A), without considering whether retreat or escape is possible, *i.e.,* a person "may stand his or her ground and meet force with force"; and he or she may do so without fear that, if it came to it, a jury may nevertheless second guess the decision not to flee from the encounter in assessing whether the use of deadly force was justified."

"[n]o finder of fact shall be permitted to consider the possibility of retreat as a factor in determining whether or not the person who used deadly force had a reasonable belief that deadly force was reasonable and apparently necessary"

***State v. Wells***, 2014-K-1701 (La. 12/8/2015) 209 So.3d 709

The legislation enacting the "Stand Your Ground" defense did not address the interplay between that legislation and the existing statutes specifically La. R.S. 14:21 which states that the aggressor cannot claim self-defense.  It states as follows

**"§ 14:21. Aggressor cannot claim self defense**

A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict."

The issue was most recently addressed in ***State v. Gasser***, 18-KA-531 (La. App. 5 Cir. 7/3/19) 275 So. 3d 876, 985, where the appellate court noted that –

"The aggressor doctrine was enacted in 1942 and has never been amended.  Paragraph (4) of La. R.S. 14:20(A) Was added in 1983 and has been amended several times including an amendment in 1997 to extend the article to motor vehicles"

The jury in the state court prosecution of the plaintiff was instructed on the "Stand Your Ground" defense as well as the "Aggressor Doctrine." These two (2) statutes are at odds and cannot be easily reconciled.

"The State has the burden of disproving the homicide was committed in self-defense."

***State v. Brister***, 19-507 (La. App. 3 Cir. 3/20/2020), 297 So. 3d 992.   Obviously the jury in plaintiff's case found that the state had carried its burden of proof.

Obviously Summary Judgment can only be granted if there is no dispute as to the facts and there is only a legal issue before the court.  It is submitted that there is no dispute as to the facts only the conclusion drawn from them.

**LAW OFFICE OF,**

**/S/ THOMAS R. WILLSON_____**
**THOMAS R. WILLSON**
**1330 JACKSON STREET, SUITE C**
**ALEXANDRIA, LOUISIANA  71301**
**PH. NO. (318) 442-8658**
**FAX NO. (318) 442-9637**
**rocky@rockywillsonlaw.com**
**Attorney for Kayla J. Giles (#13546)**

**<u>Certificate of Service</u>**

I hereby certify that this Response was provided to Counsel for United Specialty Insurance Company, Celeste D. Elliott, by deposing the same in the U.S. Mail addressed to 601 Poydras Street, Suite 2775, New Orleans, La. 70130, with sufficient postage affixed, this 23rd day of February, 2022.

**/S/ THOMAS R. WILLSON_____**
 **THOMAS R. WILLSON**