UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| KAYLA J GILES | CASE NO. 19-cv-1173 |
| -vs- | JUDGE DRELL |
| DELTA DEFENSE L L C ET AL | MAGISTRATE JUDGE PEREZ-MONTES |

## RULING AND ORDER

Before the Court is a Motion for Summary Judgment, (Doc. 34), filed by defendant Delta Defense, L.L.C. ("Delta"), and a Motion for Summary Judgment, (Doc. 38), filed by defendant United Specialty Insurance Company ("United"). For the following reasons, the motions are **GRANTED**.

I. FACTS AND PROCEDURAL POSTURE

Plaintiff Kayla Giles ("Giles") is a member of the United States Concealed Carry Association ("USCCA"). United issued an insurance policy to Delta to provide self-defense liability coverage to all USCCA members, and Giles enrolled in that policy on August 27, 2018. On September 8, 2018, Giles shot her estranged husband Thomas Coutee ("Coutee") who died as a result. Giles was subsequently charged with second degree murder and obstruction of justice. State of Louisiana vs. Kayla Jean Giles Coutee, 9th JDC, Parish of Rapides, Docket No. 345209 ("State v. Giles").

While still at the scene of the shooting, Giles contacted USCCA to report the incident and seek coverage pursuant to the United insurance policy. United tendered $50,000 to be used as a retainer for Giles' criminal defense attorney Paul Carmouche

("Carmouche") subject to a reservation of rights. Then, Carmouche provided United with the state's evidence in the criminal lawsuit. After review of the state's evidence, United determined that the death of Coutee was not covered under the policy and disclaimed coverage.

Before the trial in State v. Giles, Giles filed suit against Delta and United to recover funds due under the policy, and Delta and United filed separate motions for summary judgment. We stayed decisions on the motions subject to finality in the criminal proceedings. Giles was ultimately found guilty of both second degree murder and obstruction of justice by a unanimous jury on January 29, 2022.

## II. SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 680 (5th Cir. 2011) (internal citations omitted). It is important to note that the standard for summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law.

The movant has the burden of pointing to evidence proving there is no genuine dispute as to any material fact, or the absence of evidence supporting the nonmoving

party's case. The burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claim. Liberty Lobby, 477 U.S. at 250. The nonmoving party must establish the existence of a genuine dispute of material fact for trial by showing the evidence, when viewed in the light most favorable to him, is sufficient to enable a reasonable jury to render a verdict in his favor. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Duffy v. Leading Edge Products, Inc., 44 F.3d 308, 312 (5th Cir. 1995). A party whose claims are challenged by a motion for summary judgment may not rest on the allegations of the complaint and must articulate specific factual allegations which meet his burden of proof. Id. "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." Duffy, 44 F.2d at 312, citing Liberty Lobby, 477 U.S. at 247.

### III. DELTA

Delta claims it is not an insurance company but merely an intermediary to the United policy providing coverage to USCCA members and that any suit for insurance proceeds should be raised against United only. Giles does not dispute these claims. Accordingly, Giles' claims against Delta are not viable and will be dismissed with prejudice.

### IV. UNITED

The United policy, to a specified limit, insures against tort liability and provides for tort and criminal defense cost. Giles' first seeks the criminal defense

limit specified under the policy and alternatively seeks any other possible coverage included under the policy. (Doc. 1, ¶¶ 19-20).

Regarding tort liability, United's policy in pertinent part reads:

**BODILY INJURY, PROPERTY DAMAGE LIABILITY AND DEFENSE PAYMENTS AND EXPENSES COVERAGE LIABILITY**
**1. Insuring Agreement**
a. We will pay on behalf of the insured "damages", in excess of the Each Claim Retention Amount subject to the Annual Aggregate Retention Amount stated in the Declarations, because of "bodily injury" or "property damage" arising out of:
(1) An "act of self-defense"; or
(2) "Covered legal liability" arising out of a non-insured's use of a stolen:
(a) "Safeguarded firearm"; or
(b) Firearm from a "secured location"; or
(c) Firearm from a "secured auto"; or
(d) Firearm taken from the "personal possession" of the insured arising out of a robbery.
The insurance provided in item **1.a. (2)** above applies only if the theft of the firearm is promptly reported to the proper authorities upon discovery.

(Doc. 38-3 p 16). State v. Giles is not a "claim or suit for bodily injury or property damages" for which Giles has "become[ ] legally obligated to pay as a result of a judgment, adjudication or settlement." (Id. p 24 definition of "Damages"). Accordingly, Giles may not claim the benefit of the tort liability portion of United's policy. Additionally, State v. Giles is not a "civil proceeding," and therefore, Giles may not claim the benefit of tort defense cost. (Compare Id. at p 25 definition of "Suit" with Id. at p 18, Section I – Coverages, Defense Payments and Expenses, 1).

Regarding criminal defense cost, United's policy in pertinent part reads:

2. We will pay criminal defense costs incurred by an insured as follows:
a. We will pay, up to the Criminal Defense Occurrence Limit stated in the Declarations, the reasonable and necessary costs and expenses incurred by the insured in connection with the investigation or

> defense of any criminal charge or criminal proceeding arising out of the use of a firearm, or other weapon, that is "legally possessed" but only if and when
> (1) The insured is arrested or charged with, or subject to inquiry or questing regarding, a crime as a result of the use of a firearm, or other weapon, that is "legally possessed" and used in a [*sic*] "act of self-defense", and ...

(Id. at p 19). According to these terms, the policy provides criminal defense cost if a firearm was used in an "act of self-defense," which the policy defines as:

> ... an act of defending one's person or others by the actual or threatened use of a firearm, or other weapon, that is "legally possessed", against an imminent threat of death or serious bodily harm by an aggressor, but only if:
> a. any force used is both reasonable under the circumstances and proportionate to the threat; and
> b. the act is permitted by applicable law.

(Id. at p 42, definition of "Act of self-defense" as amended June 1, 2018). Giles argues that the policy hinges upon the insured's subjective state of mind and that any other interpretation would make the policy a nullity as it would allow the insurer to substitute its judgment for that of the insured.

United, who filed its Motion for Summary Judgment before the jury verdict was entered in State v. Giles, argues:

> ... there is no evidence that Giles' use of the firearm was an "act of self-defense" as that term is defined in the Policy, *i.e.* that Giles was faced with an imminent threat of death or serious bodily harm by Coutee and that Giles' shooting was both reasonable under the circumstances and proportionate to any threat.

(Doc. 38-1 p 5). Subsequent now to the jury verdict finding Giles guilty of second degree murder and obstruction of justice, United further argues that under Louisiana law, a jury is necessarily required to consider and reject any argument that a criminal defendant acted out of fear or in self-defense to reach a guilty verdict on second degree

murder. (Doc. 70 pp 3-4, citing State v. Bull, 296 So. 3d 1175 (la. App. 2 Cir. 2020), *writ denied*, 307 So. 3d 1040 (La. 2020).

We agree with United. Although Giles' criminal defense included claims of self-defense, the jury found otherwise, and such a finding precludes an apprehension of "imminent threat of death or serious bodily harm by an aggressor" or that the "force used [was] both reasonable under the circumstances and proportionate to the threat." (Doc. 38-3 p 42, definition of "Act of self-defense" as amended June 1, 2018). Further, the jury was instructed on the applicable law and found that Giles could not avail herself to the defense of justifiable homicide codified in La. R.S. 14:20.[1] (Doc. 68 p 6). Accordingly, the shooting of Coutee does not fall within the definition of "act of self-defense" as defined by United's policy.

---

[1] The parties have not filed any part of the state court record, but their arguments indicate without dispute as to these factual conclusions.

## V. CONCLUSION

For the reasons described above, it is hereby...

**ORDERED** that Giles' claims against Delta are **DISMISSED with prejudice**. It is also hereby...

**ORDERED** that Giles' claims against United are **DISMISSED without prejudice**. Giles may reassert her claim against United in the event her conviction is reversed on self-defense grounds.

**THUS DONE AND SIGNED** at Alexandria, Louisiana this 8th day of March 2022.

DEE D. DRELL, SENIOR JUDGE
UNITED STATES DISTRICT COURT